ly pleading contributory negligence. We deem any further consideration of these issues unnecessary, because in the view of the facts adopted by us the plaintiff was necessarily not guilty of negligence proximately causing or contributing to the accident.

For the reasons assigned, our previous decree is reinstated and is the final decree of this court.

Original decree reinstated.

---

## MARTIN v. TOYE BROS. YELLOW CAB CO., Inc., et al.

### No. 16099.

Court of Appeal of Louisiana. Orleans.
Nov. 18, 1935.

For former opinion, see 162 So. 257.

John P. Sullivan, David Sessler, and Gordon Boswell, all of New Orleans, for appellants.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellee.

McCALL, Judge ad hoc.

Following the granting of a rehearing, we have painstakingly reviewed the entire record herein and have carefully considered the arguments made in brief and at the bar; and the result is that we are the more convinced of the correctness of our original conclusions.

We consider that the facts proven by the weight of the testimony and the probabilities are accurately set forth in our previous opinion.

The only substantial issue of law is in regard to the sufficiency of the original answer as containing a plea of contributory negligence and the propriety of allowing the amended answer definitely and clear-

## ROUSSEAU v. DEMOCRATIC PARISH EXECUTIVE COMMITTEE FOR PARISH OF ST. MARTIN.*

### CHAMPAGNE et al. v. SAME.

### Nos. 1568, 1569.

Court of Appeal of Louisiana.
First Circuit.
Nov. 15, 1935.

---

*Writs of certiorari, prohibition and mandamus refused 165 So. 166.

F. Xavier Mouton, of Lafayette, and Porteus R. Burke and Jacob S. Landry, both of New Iberia, for appellants.

Labbe & Guidry, of St. Martinville, for appellee.

In the case of Joseph Rousseau v. Democratic Parish Executive Committee for the Parish of St. Martin, the order based on oral reasons was as follows:

PER CURIAM.

Following the course pursued by the Supreme Court in the case of McConnell v. Salmon, 174 La. 606, 141 So. 73, which case, like the present, was one requiring a decision within twenty-four hours after submission, we will, for the present, assign oral reasons for judgment only and prepare and file written reasons at as early a date as possible.

For the said oral reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment herein appealed from be, and the same is hereby, reversed and set aside, and,

It is now ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, Joseph Rousseau, and against the defendant Democratic Parish Executive Committee for the Parish of St. Martin, La., ordering the said committee to accept the notice of intention of the said Joseph Rousseau to become a candidate for the Democratic nomination for the office of Representative in the Legislature of the state of Louisiana from the parish of St. Martin, or member of the House of ·Representatives of the state of Louisiana from the parish of St. Martin, and directing and ordering the said Democratic executive committee to recognize and certify the said Joseph Rousseau as such candidate to the end that his name may properly appear on the ballot to be voted on in the primary election to be held in the parish of St. Martin on the 21st day of January, 1936.

It is further ordered that defendant pay all costs.

DORE, J., dissenting, and will hand down written reasons.

In the case of Homer Champagne v. Democratic Parish Executive Committee for the Parish of St. Martin, the order based on oral reasons was as follows:

PER CURIAM.

Following the course pursued by the Supreme Court in the case of McConnell v. Salmon, 174 La. 606, 141 So. 73, which case, like the present, was on requiring a decision within twenty-four hours after submission, we will, for the present, assign oral reasons for judgment only and prepare and file written reasons at as early a date as possible.

For the said oral reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment herein appealed from be, and the same is hereby, reversed and set aside, and,

It is now ordered, adjudged, and decreed that there be judgment herein in favor

of each of the plaintiffs Homer Champagne, Luke Courville, Lionel Broussard, Elus Daigle, Ulinore Guidry, Davous Guidry, Rene Broussard, Vincent Guidry, Maurice Latiolais, Henry F. Roberthon, Stevens Guidry, Euphemond Dupuy, J. Z. Berard, and Robert Thomas and against the defendant Democratic parish executive committee for the parish of St. Martin, La., ordering the said committee to accept the notice of intention of each of the said plaintiffs to become a candidate in the Democratic primary to be held on January 21, 1936, for the respective office set opposite the name of each as follows: Homer Champagne, candidate for the Democratic nomination for the office of police juror for the Fifth ward of the parish of St. Martin, La.; Luke Courville, candidate for the Democratic nomination for the office of police juror of the Fifth ward of the parish of St. Martin, La.; Lionel Broussard, candidate for the Democratic nomination for the office of police juror of the Fourth ward of the parish of St. Martin, La.; Elus Daigle, candidate for the Democratic nomination for the office of police juror of the Fourth ward of the parish of St. Martin, La.; Ulinore Guidry, candidate for the Democratic nomination for the office of constable of the Fourth ward of the parish of St. Martin, La.; Davous Guidry, candidate for the Democratic nomination for the office of constable of the Fifth ward of the parish of St. Martin, La.; Vincent Guidry, candidate for the Democratic nomination for the office of member of the school board of St. Martin parish, La., from the Fifth ward of said parish; Maurice Latiolais, candidate for the Democratic nomination for the office of member of the school board of St. Martin parish, La., from the Fifth ward of said parish; Henry F. Roberthon, candidate for the Democratic nomination for the office of justice of the peace of the Fourth ward of St. Martin parish, La.; Stevens Guidry, candidate for the Democratic nomination for the office of justice of the peace of the Fifth ward of St. Martin parish, La.; Euphemond Dupuis, candidate for the Democratic nomination for the office of justice of the peace of the Fifth ward of St. Martin parish, La.; J. Z. Berard, candidate for the Democratic nomination for the office of justice of the peace of the First ward of St. Martin parish, La.; Robert Thomas, candidate for the Democratic nomination for the office of justice of the peace of the First ward of St. Martin parish, La.; Rene Broussard, candidate for the Democratic nomination for the office of constable of the First ward of the parish of St. Martin, La.—and directing and ordering the said Democratic executive committee to recognize and certify each of the said plaintiffs as the respective candidate for the Democratic nomination for the office to which he aspires and has given notice of his intention, to the end that his name may properly appear on the ballot to be voted on in the primary election to be held throughout the parish of St. Martin on the day as hereinabove set forth, to wit, January 21, 1936.

It is further ordered that the defendant pay all costs.

DORE, J., dissenting, and will hand down written reasons.

On November 15, 1935, the court handed down its written opinion as follows:

ELLIOTT, Judge.

Joseph Rousseau, plaintiff in suit No. 13221, and Homer Champagne and thirteen others, plaintiffs in suit No. 13222, allege in their respective petitions that they had, in due time and in the proper way, filed notification of their candidacy for nomination with the Democratic parish executive committee of the parish of St. Martin through its proper officer, for the office named in their petition; that objections were filed before the committee to their candidacies; that they answered the objections and that the committee, after hearing evidence, sustained the objections and rejected their candidacy. Availing themselves of the provisions of Act No. 97 of 1922, § 11 (amended by Act No. 110 of 1934) they brought suit against the committee and Wade O. Martin, chairman, to set the committee action aside and compel the recognition and certification of their respective candidacies as the law provides.

The Democratic parish executive committee appeared, and, answering the petitions, upheld the committee action. The lower court rendered judgment rejecting the demand of the plaintiffs in each suit. The plaintiffs have appealed in each case.

The district judge filed reasons in each suit, but we are acting on both appeals at the same time, making one opinion serve for both. After we had ceased discussing the cases and agreed on the decree to be handed down in each case, we had no

time left except to formulate and hand down our decrees with oral reasons, stating at the time that written reasons would be filed as soon as could be done. The Supreme Court in a recent case pursued that course.

The defendants in the Rousseau Case urged against his petition that it disclosed no cause of action, and in the case brought by Champagne and others they urged an exception of misjoinder, wrongful accumulation of actions, and no cause of action. Their exceptions having been overruled in the lower court, they contend on appeal that the ruling was erroneous, and pray that the exceptions be sustained and the suits dismissed on said account.

It is our conclusion that the petition in each case sets forth a cause of action, and that in suit No. 13222, due to the character of the suit and exigency of the situation, the joinder was permissible, properly allowed, and that there was no wrongful accumulation of actions.

The exceptions were, in our opinion, all properly overruled.

The two records show that Paul Guilbeau, a member of the committee, was the sole objector in each case. His objections, the answers thereto, and resolution adopted by the committee sustaining same are annexed to and made part of the petitions.

His objections to the candidacy of Rousseau are:

1. That he failed to qualify in due time.

2, 3. That the affidavit of the said Joseph Rousseau which accompanied said notification of candidacy in the said Democratic primary election is deficient in that:

(a) The notary failed to specify that the Joseph Rousseau personally came and appeared before him.

(b) It fails to indicate the office for which the said Joseph Rousseau is a candidate for nomination, and the parish in and for which said office applied.

(c) It fails to show the precinct and parish of which the said Rousseau is a duly qualified elector, if such he is.

(d) It fails to name the parish in which the said affidavit was taken.

In suit No. 13222 he objects to the candidacy of Homer Champagne, Luke Courville, Lionel Broussard, Elus Daigle, Ulinore Guidry, Davous Guidry, Rene Broussard, Vincent Guidry, Maurice Latiolais, Henry F. Roberthon, Stevens Guidry, Eu-

phemond Dupuis, J. Z. Berard, and Robert Thomas on the ground that their respective notifications were not filed in due time and failed to designate the ward in and for which they intended to be a candidate. Also that their affidavit, meaning their declaration under oath, failed to show the ward in and for which they intended to qualify as a candidate. He further objected to the candidacy of Elus Daigle, Lionel Broussard, Luke Courville, Ulinore Guidry, and Henry F. Roberthon on the ground that their affidavit fails to show the precinct for which they are an elector. We will take up the Rousseau Case first. He is a candidate for the Legislature, a parish-wide office. All the others are candidates for ward offices. The objection that notification was not given in due time was evidently abandoned. We therefore do not act on it.

For the purpose of our opinion, we copy from the Primary Election Law, Act No. 97 of 1922, § 13 (amended by Act No. 110 of 1934) the statutory requirement upon which all objections are based: "That any person desiring to become a candidate in any primary election held under the provisions of this act, shall * * * file with the respective officers hereinafter designated, his written notification of his intention to become a candidate at such primary, accompanied by a declaration under oath that to the best of his knowledge and belief he is a duly qualified elector under the constitution and laws of this State, that he is a member of the party calling said primary election, and that he possesses such qualifications as are required by the state central committee of such party." There are no other requirements and nothing further can be required.

The committee had before it the written objection filed by Guilbeau. Under the law, section 11 (amended by Act No. 110 of 1934), only the written objections filed before it could be considered. It had no power to add to the objections nor to consider anything or matter not urged as an objection. The committee had only statutory power and authority and anything attempted to be done beyond the statutory power was as if not done. The resolution adopted by the committee in acting on the objection does not indicate that it exceeded its power, but indicates that the committee confined themselves to the objection made and went no further. But we find that the lower court, in holding

that Rousseau had not qualified, acted on a matter not urged as an objection to his candidacy. There was no objection to his candidacy urged before the committee, that L. J. Bienvenu, the notary public, did not administer to him an oath such as the law intends. The lower court, acting on an inference of that kind drawn by him from parol evidence received on the trial before him, made same the sole foundation for his judgment in upholding the action of the committee.

 The power of the courts on the subject of primary election controversies is also statutory and must be kept within proper limits. The case Melerine v. Democratic Parish Executive Committee, 164 La. 855, 114 So. 711, 713, is an authority in point. Section 11 of Act No. 97 of 1922 contained the words "in' detail," left out of the amending law. This does not detract from the pertinency of the following language in the case cited: "And since the court can only review the decision of the committee, it follows that any other objections which might have been made, but were not made, are wholly immaterial to the issues before the court. And since new objections cannot be urged before the court which were not set up 'in detail' before the committee, it follows that this plaintiff was not called to anticipate any such new objections by setting forth in his petition, and later on proving, that he has all the qualifications required for the office which he seeks. To hold otherwise would amount, in effect, to allowing objections to plaintiff's candidacy to be made for the first time in the courts and not before the committee, and to allow such objections to be made not 'in detail,' but in the most general manner conceivable, to wit, that his objection 'shows no cause of action.'" The judgment appealed from is erroneous for the reasons stated. We could stop here, but we have concluded to review the evidence upon which the lower court acted, as we think his conclusion is also erroneous in that respect.

The note of testimony shows that on the trial of the case the plaintiff objected to any testimony which tended to place before the court any objection to his candidacy other than that which had been made by Paul Guilbeau before the committee. But the lower court overruled the objection and permitted the examination along that line to continue. The objection should have been sustained. As a result of the ruling, however, questions were asked Bienvenu, notary public, and the plaintiff Rousseau, and answers obtained, which the court held justified his conclusion that the notary public did not actually administer any oath to Rousseau, and that Rousseau merely signed the paper attached to the notification without having been actually sworn. We have already referred to the law which provides that the notification must be "accompanied by a declaration under oath that to the best of his knowledge and belief he is a duly qualified elector under the constitution and laws of this State, and that he is a member of the party calling said primary election, and that he possesses such qualifications as are required by the state central committee of such party."

The formality which must be observed to the end, that an oath may have the power which it exerts over truth and falsity, may be gathered from Starkie on Evidence, subject, Test of Truth, vol. 1, § 53 et seq., p. 79 et seq.; Greenleaf on Evidence, vol. 1, subject, Competency of Witnesses, § 328 et seq.; Bouv. Law Dict., vol. 1, p. 251, verbo, Oath; Ruling Case Law, vol. 20, subject "Oath" and "Affirmation," p. 504, §§ 1, 2, 3 et seq.; Encyclopædia Britannica, vol. 17, p. 698, verbo, "Oath."

We copy from Ruling Case Law: "But while a large liberty is thus given to the form of the oath, some form remains essential. Something must be present to distinguish between the oath and the bare assertion. An act must be done and clothed in such form as to characterize and evidence it. This is so for the double reason that only by some unequivocal form could the sworn be distinguished from the unsworn averment and the sanctions of religion add their solemn and binding force to the act. Hence to make a valid oath, there must be in some form in the presence of an officer authorized to administer it, an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath."

The foundation of controversy being the notification and declaration accompanying it, we copy from the record Rousseau's notice and the declaration he made for the better understanding of the situation in each case. There is a printed statement at its top which reads: "Suggested form to be used by candidates for Parish and Ward Offices prepared and furnished by

the Secretary of State and approved by the Attorney General." After and under that it reads:

"State of Louisiana, Oct. 11, 1935.

"To the Chairman of the Parish Democratic Executive Committee of the State of Louisiana:

"Sir, I, Joseph Rousseau, hereby notify you that I will be a candidate in the Democratic Primary Election to be held in the State of Louisiana on January 21, 1936 for the nomination as candidate of the Democratic Party for the office of a member of the State House of Representatives of St. Martin Parish of the State of Louisiana.

"I declare that I am a duly qualified elector under the Constitution and Laws of the State of Louisiana; that I am a member of the Democratic Party calling the state Primary Election, and that I possess the qualifications fixed by the Democratic State Central Committee of the State of Louisiana. I enclose certified check, for the cash sum of $50.00, this being the deposit in the amount of $——— required by section 14 of Act 97 of 1922 as amended, the deposit in the amount of $——— required by resolution of the Democratic State Central Committee, and deposited in the amount of $——— required by the resolution of the Parish Democratic Executive Committee.

"Respectfully,
"Joseph Rousseau,
"R. I., St. Martinville, La."

"Affidavit.

"State of Louisiana,
"Parish of ———.

"Before me the undersigned authority personally came and appeared ——— who being by me first duly sworn deposes and says that, to the best of his knowledge and belief:

"1. That he is a candidate in the Democratic Primary Election to be held in the State of Louisiana on January 21, 1936 for the nomination as a candidate of the Democratic party for the office of ——— of ——— Parish of the State of Louisiana.

"2. That he is a duly qualified elector under the Constitution and Laws of this State of the ——— precinct of the 5th ward of ——— Parish of the State of Louisiana.

"3. That he is a white person and possesses all the qualifications of residence and all other qualifications required by the Democratic State Central Committee.

"4. That he is a registered voter and has signed the poll registration books for the years 1934 and 1935 as required by the Constitution and Laws of the State of Louisiana, including Act 16 of the 2nd [3d] Extraordinary Session of 1934 approved December 16, 1934.

"5. That he is a member of the Democratic party and is not associated with or an adherent of any organization, association or party opposed to the Democratic party, or which deals in doctrins inconsistent with those of the Democratic Party or which teaches any doctrins inconsistent with those of the Democratic Party or inimical to the Constitution of the United States or of the State of Louisiana.

"6. I am a bona fide and not a dummy candidate for said office.

"Joseph Rousseau.

"Sworn to and subscribed before me 11th day of Oct. 1935.

"Lee J. Bienvenu, Notary Public."

Notaries public have the right to administer oaths. Revised Statutes of 1870, § 2493; Acts 1877, No. 7, p. 10.

According to the testimony, Bienvenu, notary public, went to the field where Rousseau was at work and Rousseau said to him, "I have to swear before a notary, and I said that is the reason why I came here, and I filled out his paper as it reads there."

Questioned with reference to the blanks left in the declaration, Bienvenu said he did not think it was necessary to fill them in; that he thought there was enough on the papers to show what the man understood or intended to qualify for. That Rousseau had read the declaration the day before. The evidence shows that the declaration which he said Rousseau had read the day before, however, was not the one which Rousseau signed before him.

Bienvenu further questioned:

"Q. What occurred, if anything, with reference to the signing of the affidavit by Rousseau or the plaintiff. Please relate what occurred in connection with Rousseau's signing the affidavit before you as notary? A. I ask him if he wanted to qualify as member of the State House of Representatives. I said Joe, I'm here as notary; as notary you are taking an oath when you sign this before me to qualify

as a candidate for member of the State House."

The witness further said that he told Rousseau, in the event that a few little things were left out, that he would get in touch with somebody who knew something about it to fill it out. That he told Rousseau that he had to sign an affidavit, so Rousseau signed below where the affidavit was.

"Q. Did he read the affidavit? A. He knew it before. He had read it before; he is bound to have read it. Mr. Rousseau looked at the paper and knew what it was, then he signed it.

"Q. You are positive that you called his attention to the fact that he was making an affidavit? A. Positive. I may add that the '3rd ward' was added after he read the paper; he then signed under the affidavit."

The record shows that he attached his jurat, saying, "Sworn to and subscribed before me this 11th day of Oct. 1935," and affixed to it his official seal, the imprint of which shows that he is a notary public in and for the parish of St. Martin.

The testimony of Joseph Rousseau bears out that of Bienvenu. He testified that he knew he had to sign an affidavit and signed the paper placed before him by Bienvenu accordingly. His intention to swear appears and an act performed putting his intention into effect. He added with his pen "5th" in the blank space for ward, but does not claim to have actually read the declaration that he signed, and testified that he had read one just like it the day before.

It seems to us from the testimony of Bienvenu and Rousseau on the subject that Rousseau, in signing this declaration before Bienvenu intended to take a formal oath, and did so within the purview of the law. To say otherwise is to hold against the truth of Bienvenu's jurat and of his notarial seal. We are unable to find any decision of the Supreme Court of this state dealing with the formality which must be observed in order to constitute a declaration under oath. But Dunlap v. Clay, 65 Miss. 454, 4 So. 118, United States v. Mallard (D. C.) 40 F. 151, 5 L. R. A. 816, and Atwood v. State, 146 Miss. 662, 111 So. 865, 51 A. L. R. 836, cited in plaintiff's brief support in principle the position taken on the subject by the contestee.

Section 33 of Act No. 97 of 1922 (amended by Act No. 110 of 1934) contains a provision which among other things says that, "and any person making any false answer under oath or otherwise." We do not consider that Rousseau made a false answer under oath or otherwise.

■ There is objection that Rousseau's notification does not state the precinct and ward of which he is an elector. He is a candidate for a parish-wide office which is stated. Act No. 97 of 1922 § 13 (amended by Act No. 110 of 1934) does not require that the notification should state the precinct and ward of which the candidate is an elector.

We think Rousseau's qualification should be upheld. That the judgment appealed from to the contrary, is, for the above and foregoing reasons, erroneous and must be annulled, avoided, and set aside, and judgment rendered in favor of Rousseau as prayed for, and our decree heretofore handed down has ordered accordingly.

■ The candidacy of Homer Champagne and his coplaintiffs, thirteen in number, were rejected by the committee and the committee rejection was upheld by the lower court on the ground that their notification does not state any office for which they are a candidate nor the ward of which they are an elector. The judge a quo refers to the law under which the parishes are subdivided into wards and these wards, under police jury ordinances, into precincts for the purpose of voting. The lower court took cognizance of the fact that the parish of St. Martin is divided into six police jury wards, from which one police juror, one member of the school board, one justice of the peace, and one constable from each ward is elected in that parish. The action of the committee was upheld in the lower court on the ground on which he acted in holding that a notification as such, in order to satisfy the law, must state the ward and the precinct from which the particular police juror, school board member, justice of the peace, and constable offers as a candidate. And if it does not, there is, in effect, no notification or candidacy which the Democratic parish executive committee could recognize.

In order that the situation may be the better understood, we copy from the opinion of the lower court: "The law requires that in his written notification he shall therein state the office which he seeks;

whether state, district, parish, municipal or ward office. This legal requirement in one written notification of candidacy can not be dispensed with or avoided; the provisions of our Primary Law so declaring. In this instance we find these plaintiffs respectively declaring for the office of police juror; member of the school board; justice of the peace and constable of St. Martin Parish. Neither of these plaintiffs have in their written notification of candidacy met requirements of the law. Neither have declared in writing for any ward office. On the contrary they have declared for an office which does not exist, there being no provision of law creating such offices as police juror of the parish, member of the school board of the parish, justice of the peace and constable of the Parish."

In another place, he says: "In the case at bar we find each ward a distinct entity in itself; each entitled to elect offices within their territorial limits; each a unit in itself as to these offices separate and apart from the other wards. Hence it follows that one who seeks an office in and for said ward, to be elected by the electors within the territorial limits of said ward, must, by the very terms of the statute, declare in his written notification of candidacy the ward office which he seeks."

In another place: "The contention of counsel for plaintiffs that this admitted failure, on the part of plaintiffs, to designate the ward office which they seek, is cured by reference to the affidavit wherein these plaintiffs set out the ward in which they are qualified electors, is without merit * * * The written notification of candidacy and the affidavit are two separate and distinct actions on the part of one who aspires to office. The failure of one cannot be supplied by the other, nor can they be merged into one document."

The above language shows unmistakably that the lower court, acting on the face of the notification, upheld the action of the committee on the sole ground that the contestees did not state in their respective notifications the particular ward in the parish in which they sought to offer themselves as a candidate. That the office mentioned in the notification, to wit, "police jury of St. Martin Parish," "parish school board member of St. Martin Parish," "justice of the peace of St. Martin Parish," "constable of St. Martin Parish,"

was no office; that the notification was therefore not such as the committee or the courts could recognize under the Primary Election Law. The opinion does not deny that if the accompanying declaration under oath may be taken into account, the notification is sufficient, but contends that this cannot be done. We differ with the lower court on this subject. We think the accompanying declaration can and should be taken into account in acting on the sufficiency of the notification. The declarations under oath not only state the ward of the parish in which the candidate is an elector, but all except those of Elus Daigle, Lionel Broussard, Luke Courville, Henry F. Roberthon, and Ulinore Guidry state in addition the precinct at which they vote. This declaration under oath is, by the law, made a necessary part of the notification. Without this declaration there is no notification. As notification without this accompanying declaration would be no notification, we believe that when the ward of which the elector is a voter is set forth and contained in the declaration under oath, this declaration under oath must be taken into account in acting on the notification, because under the law, one is an essential accompaniment of the other. The declaration informed the committee of all that they were required to know under the statute in order to certify the candidacy of the party and properly allocate him as a candidate for office from that particular ward. This committee composed of electors from each ward in the parish of St. Martin must, under the law, Const. 1921, art. 8, § 13, be charged with knowing the ward in which each of these candidates was an elector. We have already quoted the language of the statute on the subject, and we take into account the fact that the statute does not provide that the notification must, as to ward candidates, state the particular ward in which they are an elector; therefore, when the declaration which accompanied the notification contained such information, the notification should be deemed sufficient. In this connection, we quote the Supreme Court in Langridge v. Dauenhauer, 120 La. 450, 45 So. 387, 388. The court in that case had before it a question concerning the payment of an assessment against candidates under the Primary Election Law, Act No. 49 of 1906, but the contestant was urging a technicality, and the language of the court, in acting on the contest, seems so appropriate that we quote from the

opinion as follows: "The whole spirit of the legislation is to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way."

The declaration under oath which accompanied each of the notifications taken into account, all the information necessary for the notification was before the committee; therefore the action of the committee and the judgment of the lower court in upholding the committee action, which, unless set aside, will have the effect of defeating the candidacy of these candidates for ward offices, is in our opinion erroneous and contrary to the law and the evidence, and is therefore annulled, avoided, and set aside, and our decree herein heretofore entered orders accordingly.

DORE, Judge (dissenting).

I respectfully dissent from the opinion of the majority of this court for these reasons:

In the case of Joseph Rousseau, the affidavit was very defective in that it shows on its face that said Joseph Rousseau did not appear and was not duly sworn by a notary who attached his jurat thereto.

The affidavit is also defective in that it does not show where if at any time this affidavit was executed.

It is my opinion that when the law says that a notification shall be accompanied by a declaration under oath, it means that the taking of an oath that is well understood, and such an oath that if the party should falsify, he shall be convicted of perjury. In this case, Mr. Rousseau was not sworn and did not take an oath, and to say that he agreed to the signing of his name on a blanket line, his taking an oath is travesty of law.

As to the other fourteen cases, namely, the case of "Homer Champagne et al.," I am of the opinion that they did not declare in their notification their candidacy for any office known in the state of Louisiana. I am treating their notification and give as an example the following: "I hereby declare that it is my intention to become a candidate for Police Jury of the Parish of St. Martin." It is my opinion that this declaration of intention was not complete, and it is not up to the committee of the parish of St. Martin or any other committee to determine from outside sources the intention of the applicant.

I do agree, however, that, as stated in the case of Langridge v. Dauenhauer, 120 La. 450, 45 So. 387, that we should encourage candidates for nomination for public office, but these candidates must properly notify the several committees for the respective offices they seek, and must clearly state their intention to become such candidates.

In these cases, the evidence is replete to the effect that they are not bona fide candidates, but they are merely dummy candidates, which the law prohibits.

I fully agree with the lower court in its reasons for judgment in both cases and see no reason why we should disturb them.