361 So.2d 874 (1978)
William A. ROE, Vernon Dowdy and Jerry Blanchard, Plaintiffs-Appellees-Respondents,
v.
Dallas Arnold PICOU, Jr., Defendant-Appellant-Relator.
No. 62816.
Supreme Court of Louisiana.
August 18, 1978.
*875 George M. Strickler, Jr., New Orleans, for defendant-appellant-relator.
Chalin O. Perez, New Orleans, Michael Kirby, Port Sulphur, Luke A. Petrovich, Buras, for plaintiffs-appellees-respondents.
TATE, Justice.
By certain proceedings in district court, the defendant Picou's notice of candidacy for a school board election was held to be deficient, and he was disqualified as a candidate. The court of appeal affirmed. 361 So.2d 1328 (La. 4th Cir., 1978). We granted Picou's application for certiorari to review that judgment and also for certain supervisory relief. 361 So.2d 879.
Picou, a resident of Belle Chasse in Plaquemines Parish, filed his notice of candidacy for the office of school board, La. R. S. 18:463 (1976), with the parish clerk of court, La. R. S. 18:462, a proper qualifying official for local candidates. The notice of candidacy was held to be deficient because he designated the ward number of the school board position he sought in accordance with a parish regulation which had been invalidated by the federal courts. However, in the light of the federal invalidation of the parish regulation, a different ward number for the Belle Chasse district would be correct.
The true issue of this litigation is whether the defendant Picou had, therefore, "failed to qualify for the primary election in the manner prescribed by law." La. R. S. 18:492(1).
La. R. S. 18:463 requires that the notice of candidacy shall, among other particulars, state "the office he seeks." Arguably, by this incorrect designation of candidacy for the wrong-numbered ward, the candidate did not state such office, as required by the cited statute.

I.
Prior to June 11, 1970, the school board of Plaquemines Parish was composed of ten members, elected from ten single-member districts. Under the ten -ward system, the relator Picou is a resident of Ward 6, in which Belle Chasse is situated.
On July 11, 1970, the school board adopted a resolution by which the school board was composed of five members elected parishwide, but with one member to be a resident of five wards earlier created for parish-government purposes. Under the five -ward system, Belle Chasse is situated in Ward 5.
The relator Picou, stating that he was domiciled in Belle Chasse (and was a duly qualified elector of Ward 5, Section 3B, Parish of Plaquemines), stated in his notice of candidacy that he qualified as "a candidate in the Primary Election to be held on the 16th day of September, 1978, for election to the office of School Board Member, Ward 5, Plaquemines Parish." (Italics ours.)
If the five -ward system were still in effect, this notice of candidacy of July 14, 1978 undoubtedly complied with legal requirements for qualifying as a candidate for the school board from the district (Ward 5) which included Belle Chasse, the relator's place of domicile.
However, before the qualifying date, the federal courts had invalidated the June 11, 1970 resolution for at large-elections for the five-ward system and had enjoined implementation of any method of electing school board members other than from the ten-ward system in effect prior to June 11, 1970. Broussard v. Perez, 416 F.Supp. 584 (E. D. La. 1976), affirmed 572 F.2d 1113 (C.A. 5 1978). By virtue of this decree, as to which no stay order has been issued, Belle Chasse is in Ward 6 (not Ward 5, his *876 designated ward in his notice of candidacy[1]) for school board election purposes.
Because the federal court order applied only to school board elections, Belle Chasse was situated in Ward 5 for certain local-government election purposes (Parish Council, for instance) where the five-ward system applied, and in Ward 6 for other purposes (the school board, for instance) where the ten-ward system applied.
The relator Picou filled out his notice of candidacy by reference to the registration certificate which had been issued to him by the parish registrar of voters. This shows that he is registered to vote in Ward 5. He and a companion testified that they asked the clerk of court, with whom they qualified, if the ward reflected by the registration certificate was correct for the notice of candidacy. That official did not recall the query and did not think it had been made.

II.
In this court, the relator Picou concedes that  since no stay order was obtained of the federal court appellate decree of May 12, 1978 invalidating the five -ward system , the ten -ward system applies to the primary election of September 16, 1978, for which he qualified as a candidate for the school board for the ward (incorrectly designated by him as Ward 5) in which Belle Chasse, his domicile is located.
He argues, however, that in view of his unmistakable intent to qualify for the Belle Chasse school board position, as well as of the understandable confusion as to the correct numerical designation of that district, his notice of candidacy should be held to be in substantial compliance with the requirements of La. R. S. 18:463; and he requests supervisory relief so decreeing.
The record reflects the official confusion and the lack of official information available to the public concerning the correct designation of the ward-number for the school board election scheduled to be held September 16, 1978.
The two incumbent school board members up for reelection had, on July 12 (the same date as Picou qualified, who testified he qualified for the "Ward 5" position in reliance upon this), registered in accordance with their ward numbers under the five-ward system. The clerk of court testified that he had not seen the federal decree enjoining election under any other system than the ten-ward system[2] until 4:45 p. m. on July 14, fifteen minutes before the qualifying time closed. The president of the board of election supervisors (who was also president of the parish governing body) stated that, when the incumbent Kent brought his notice of candidacy to him after he had first qualified on July 12, he became concerned because of his knowledge of the federal-court decree (in the proceedings to which he was a party); therefore, he consulted the school board attorney and advised Kent to re-qualify under the ten-ward system.[3] We note that both the clerk of court and the president of the board of election supervisors (along with the secretary of the latter) are the election officials with whom local candidates must qualify for election. La. R. S. 18:462(B).
Additionally, because of conflicting application of the five-ward and the ten-ward systems to various local offices, a parish voter is in effect registered in each system's *877 ward classifications. The registrar's certificate issued to the relator Picou shows him to be registered in Ward 5, Precinct 3B (i. e., under the five-ward system). Nevertheless, the registrar's certificate introduced in evidence (but not issued to Picou) shows that he is a registered voter in both Ward 5 of the five-ward system and Ward 6 of the ten-ward system.[4]
The official confusion that surrounded the issue is illustrated by the actions of the incumbent, Robert Kent, a school board member for twelve years, who wished to qualify for re-election, and whom the relator Picou intended to oppose in the election of September 16, 1978. Likewise, a resident of Belle Chasse (who similarly had different ward-numbers applicable to his registration, depending upon which local office was involved), the veteran official initially also qualified to run for the Belle Chasse position under the "Ward 5" designation. It was only after the president of the parish board of election supervisors had secured legal advice from the parish school board attorney, a process apparently taking nearly two days, that this incumbent was advised to re-qualify under the ten-ward system (i. e., for the Belle Chasse district under the "Ward 6" designation). He was able to do so only ten minutes before qualifications closed.
We need not detail Picou's efforts to secure from election officials information as to the correct designation of the office he sought as a candidate for the member of the school board representing Belle Chasse. It is sufficient to note that substantial evidence reflects the lack of public notice or knowledge of the effect of the federal-court decree and that election officials were unable to or did not furnish clarifying information of such effect.

III.
Thus, Belle Chasse was variously officially classified as being both in Ward 5, Precinct 3 a and b (under the five-ward system) and also in Ward 6, Precinct 1 (under the ten-ward system). Under these circumstances, a notice designating the candidacy by reference either to Ward 5 or Ward 6, which unmistakably shows that the candidate intended to qualify for the district in which Belle Chasse is located, substantially complies with the requirement of La. R. S. 18:463 that such notice of candidacy by a candidate state "the office he seeks."
In reaching this conclusion, we also take into consideration Picou's unmistakable intent manifested to election officials that he intended to be a candidate for the school board from the district including his residence at Belle Chasse, as well as the understandable public confusion and the lack of official information by election officials available to the public concerning the correct designation of the Belle Chasse school district.
As was stated under somewhat similar circumstances in Rousseau v. Democratic Parish Executive Committee, 164 So. 175, 182 (La.App. 1st Cir. 1935): "The declaration informed the [qualifying officers] of all that they were required to know under the statute in order to certify the candidacy of the party and properly allocate him as a candidate for office from that particular ward."
In Rousseau, the court rejected the attempt to disqualify candidates and to deprive the people of a choice in an election, based solely upon technical and non-confusing alleged technical inadequacies (omissions of ward-number designations) in the notices of candidacy. The Rousseau court held that any ambiguity in the designation of the office for which the candidates sought to qualify was explained by the candidates' declarations of residence, since these candidates could only run from the *878 ward of their respective residences. 164 So. 181-182.
As in Rousseau, we reject any disqualification of a candidate because of technical alleged inadequacies in the description of the office sought, where both the candidate and his opponent were clearly aware of his intent to qualify for the office he sought, which was described with sufficient particularity as unmistakably to designate it as the sole position available for candidacy to a resident of Belle Chasse, such as relator described himself.
In similarly rejecting technical objections to the sufficiency of a notice of candidacy, we stated long ago that the election laws do not "indicate that it was the purpose of the law makers to obstruct with mere technical difficulties, the exercise of the right, which every citizen has, to seek the approval of his political associates, or of the public at large. To the contrary, the whole spirit of the legislation is to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way." Langridge v. Dauenhauer, 120 La. 450, 452-53, 45 So. 387, 388 (1908).

Decree
For the reasons assigned, we reverse the judgments of the previous courts disqualifying the defendant Picou as a candidate in the primary election to be held on September 16, 1978 in the Parish of Plaquemines, State of Louisiana, for the office of school board member, and ordering that his name shall not be printed on the ballot; and we order, adjudge, and decree that there be judgment in favor of the defendant, Dallas Arnold Picou, Jr., and against the plaintiffs.
It is further ordered, adjudged, and decreed that, under the circumstances shown, the notice of candidacy of Dallas Arnold Picou, Jr., Belle Chasse, Louisiana, is in substantial compliance with the requirements of La. R. S. 18:463 and, accordingly, that Allen LoBrano, Clerk of Court, and Paul Hardy, Secretary of State, are ordered to accept this timely notice of candidacy as qualifying Dallas Arnold Picou, Jr. of Belle Chasse as a candidate in the primary election to be held on the sixteenth day of September, 1978, for the office of member, Plaquemines Parish School Board, Ward 6 of the Ten-Ward System in effect prior to the adoption of Plaquemines Parish Ordinance # 81 and prior to June 11, 1970, with said officials being also ordered to accomplish all ministerial duties requisite to effectuate this order.
The plaintiffs-respondents are cast with all costs of these proceedings.
JUDGMENTS OF PREVIOUS COURTS DISQUALIFYING CANDIDATE ARE REVERSED; CANDIDATE IS ORDERED TO BE QUALIFIED FOR PRIMARY ELECTION FOR SCHOOL BOARD MEMBER TO BE HELD ON SEPTEMBER 16, 1978.
SANDERS, C. J., dissents and assigns reason.
SUMMERS, J., dissents for the reason set forth in the opinion of the Court of Appeal, see 361 So.2d 1328.
MARCUS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
Relator, Picou, qualified as a candidate for School Board in Ward 5 of Plaquemines Parish. On a disqualification petition, both lower courts disqualified him as candidate in that ward. The courts found that he was not a resident of Ward 5 under the 10-ward system and that the 5-ward system had been invalidated. In my opinion, that judgment is correct, and all courts agree.
In this Court, the majority, instead of affirming the judgment, undertakes to reform the qualification document so that it operates as a qualification for school board in Ward 6. This judicial action is unprecedented. In my opinion, it opens the door to future abuses of our election procedures.
The Court of Appeal correctly disposed of the case, and I would affirm its judgment. See Roe et al. v. Picou, 361 So.2d 879 (1978).
*879 For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
Majority rejects disqualification of a candidate because of technical inadequacy in the description of the office sought, i. e., qualifying as a candidate for school board from Ward 5 instead of Ward 6. Majority finds this to be "substantial compliance" with the law. I disagree. Adequate information was available to Mr. Picou well prior to time for qualification that he should have qualified as a candidate for the school board from Ward 6 under the ten-ward system rather than from Ward 5 under the five-ward system. Moreover, there was no showing of bad faith on the part of any of the election officials. Mr. Picou simply mistakenly qualified for the wrong position. In my view, reformation of a candidate's application for public office by the courts establishes a dangerous precedent. Accordingly, I respectfully dissent.
NOTES
[1] Under the ten-ward system, since Belle Chasse is not in Ward 5, Picou did not possess the qualifications for candidacy to serve Ward 5. School board candidates must be domiciled in the ward or district from which he seeks election. La. R. S. 17:52(I) (1977). The ground of the objection to Picou's candidacy was that he was not qualified to serve as a school-board member from Ward 5 (i. e., under the ten -ward system), see La. R. S. 18:492(3) (1976), in which he did not reside.
[2] I. e., by which the incumbent and Picou were in Ward 6, instead of Ward 5 of the five-ward system.
[3] Kent testified that the president informed him he would have the school board attorney check the matter. Two days later (i. e., on July 14, the last day of qualifying), the president telephoned him and advised him to re-qualify on the basis of the ten-ward system (i. e., for the school board position for Ward 6 instead of for Ward 5). He did so at 4:50 p. m., ten minutes before termination of the qualification period.
[4] The registrar's certification of July 24, 1978 states as follows:

"I hereby certify that Dallas Arnold Picou, Jr. is currently registered in Plaquemines Parish, La. in Ward 5, Precinct 3-B of the five (5) ward system in effect after the adoption of the Plaquemines Parish Ordinance #81 and after June 11, 1970; and of Ward 6, Precinct 1 in the Parish of Plaquemines of the ten (10) ward system in effect prior to the adoption of Plaquemines Parish Ordinance #81 and prior to June 11, 1970."